IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSEPH SCHLANGER 2006 INSURANCE TRUST and FREDDIE JACKOWITZ and ABBE ROBERTS, individually and as administrators of the ESTATE OF JOSEPH SCHLANGER,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 09-506-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

David P. Primack, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Stephen C. Baker, Esquire, James S. Bainbridge, Esquire, and Lawrence R. Scheetz, Jr., Esquire of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania.

John E. James, Esquire, David E. Moore, Esquire, and Michael B. Rush, Esquire of Potter Anderson & Corroon LLP, Wilmington, DE. Counsel for Defendant Joseph Schlanger 2006 Insurance Trust. Of Counsel: John E. Failla, Esquire, Elise A. Yablonski, Esquire, and Nathan Lander, Esquire of Proskauer Rose LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: July 20, 2010
Wilmington, Delaware

SLEET, Chief Judge

## I. INTRODUCTION

On July 10, 2009, plaintiff The Lincoln National Life Insurance Company ("Lincoln" or "plaintiff") filed the present action against Freddie Jackowitz ("Jackowitz") and Abbe Roberts ("Roberts"), individually and as administrators of the Estate of Joseph Schlanger (the "Estate"), as well as Joseph Schlanger 2006 Insurance Trust (the "Schlanger Insurance Trust" or "defendant"). (D.I. 1) Plaintiff alleges in its amended complaint, filed on December 17, 2009, that the Schlanger Insurance Trust was a party to a contract or arrangement to unlawfully procure a $6 million insurance policy (the "Schalgner Policy" or the "Policy") on the life of Joseph Schlanger ("Schlanger"). (D.I. 21 at ¶ 34)[1] Plaintiff seeks declaratory judgment that the Schlanger Policy is void ab initio, a retainment of some or all of the premiums paid under the Policy, and other appropriate relief. (*Id.* at 15) In the alternative, if the court finds the Policy to be valid, plaintiff requests interpleader relief in order to determine the respective rights of the Schlanger Insurance Trust and the Estate to the Policy's death benefit proceeds. (*Id.* at 15-16) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Presently before the court is the Schlanger Insurance Trust's motion to dismiss for failure to state a claim, filed on December 18, 2009. (D.I. 22) For the reasons that follow, the court denies defendant's motion.

## II. BACKGROUND

Plaintiff is a life insurance company with its principal place of business in Indiana. (D.I. 21 at ¶ 2) The Schlanger Insurance Trust is a Delaware citizen because it was

---

[1] For purposes of the motion to dismiss, the facts as alleged in plaintiff's amended complaint (D.I. 21) are assumed to be true.

established under Delaware state law. (*Id.* at ¶ 5) Both Jackowitz and Roberts are citizens of New Jersey. (*Id.* at ¶ 6) The Estate is a citizen of Florida. (*Id.* at ¶ 7)

Plaintiff alleges the Schlanger Policy was procured illegally through a stranger-originated life insurance ("STOLI") scheme, a type of secondary life insurance market transaction. Its amended complaint describes the STOLI market as a phenomenon that has emerged over the last decade, comparable to unlawful wagering policies that have been around and disfavored by courts for centuries. (*Id.* at ¶¶ 10, 12) In a STOLI arrangement, speculators collaborate with an individual to obtain a life insurance policy in the name of that individual and then reassign some or all of the death benefit payable upon the death of the insured to stranger investors by selling the policy or the beneficial interest on the secondary life insurance market. (*Id.* at ¶ 11) To maximize the expected rate of return, STOLI speculators often choose individuals who are over the age of 70 and who have a net worth of at least $1 million to apply for the life insurance policies in which they will invest. (*Id.* at ¶ 14) The speculators will usually pay for the insured's related costs, such as application fees and premiums, and may even pay the insured some compensation upon issuance of the policy. (*Id.* at ¶ 16)

Schlanger was allegedly recruited to procure the life insurance policy in question as part of a STOLI arrangement. (D.I. 21 at ¶ 33) Schlanger, who was 81 years old at the time, submitted his application for life insurance (the "Application") to plaintiff on October 3, 2006 and identified the Schlanger Insurance Trust, established on September, 26, 2006, as the proposed owner and sole beneficiary. (*Id.* at ¶¶ 19-21) Marsha Bright ("Bright"), on behalf of Christiana Bank, trustee of the Schlanger Insurance Trust; Andrew Williams ("Williams"), as broker of the proposed policy; and Schlanger himself, as the proposed insured, all signed the Application (Bright, Williams

and Schlanger are collectively referred to herein as the "applicants"). (*Id.* at ¶ 22) Before the Application was submitted, the applicants allegedly contracted or arranged with a third party to sell the Schlanger Policy or the beneficial interest in the Schlanger Insurance Trust (the owner of the Policy) to a stranger investor. (*Id.* at ¶ 34) Plaintiff also alleges that the applicants knowingly misrepresented Schlanger's net worth and annual income on the Application as totaling $6,700,000 and $250,000, respectively. (*Id.* at ¶¶ 23-24, 55-57)

The Schlanger Policy was issued on December 14, 2006 with a face value of $6 million and included an incontestability clause that read: "[Plaintiff] will not contest this policy after it has been in force during the Insured's lifetime for 2 years from the Issue Date." (*Id.*, ex. A at 6) The named owner and sole beneficiary to the Policy is the Schlanger Insurance Trust, and the sole beneficiary of the Schlanger Insurance Trust is the Schlanger Family Trust. (*Id.* at ¶¶ 4, 21-22, 36, ex. 1 at 3) Plaintiff alleges that both the Schlanger Insurance Trust and the Schlanger Family Trust were established at the direction and legal counsel of persons engaged in secondary life insurance market transactions, specifically Williams and/or Christiana Bank. (*Id.* at ¶¶ 35, 38-39) As evidence that the applicants tried to conceal the STOLI nature of the Policy, plaintiff points to the language of the Schlanger Insurance Trust, which explicitly authorizes transfer of the beneficiary interest to a third party while keeping the Schlanger Insurance Trust as the Policy's owner. (*Id.* at ¶¶ 40-42) Furthermore, Christiana Bank and/or Williams allegedly used the exact same form and substance of the Schlanger Insurance Trust documents in other suspected STOLI schemes.[2] (*Id.* at ¶¶ 43-47) Due to such

---

[2] As examples of suspected-STOLI cases involving Christiana Bank and/or Williams, plaintiff lists: *The Lincoln Life National Life Insurance Company v. Martin Krauss 2006 Insurance Trust*, Civ. No. 09-CV-301-JCJ (D. Del. filed Apr. 28, 2009); *The*

suspected STOLI schemes, plaintiff investigated Williams and terminated his appointment as an insurance agent on July 6, 2007. (*Id.* at ¶ 48)

On the same day the Policy issued, December 14, 2006, Schlanger made the initial premium payment to plaintiff by check. (*Id.* at ¶¶ 26, 53) The rest of the Policy premiums were all paid to plaintiff by Christiana Bank, as trustee of the Schlanger Insurance Trust, from an account number implicated in other suspected STOLI schemes. (*Id.* at ¶¶ 27, 51-52) Plaintiff believes that a third party either paid Schlanger in advance or reimbursed him for his payment of the first premium. (*Id.* at ¶ 54) In fact, it contends, the parties involved in the alleged STOLI scheme always expected and understood, even before the Policy's procurement, that the premiums would be advanced and/or financed by a third party with no interest in Schlanger's life. (*Id.* at ¶¶ 49-50) In return for Schlanger's participation in the alleged STOLI plan, he allegedly received, or expected to receive, compensation from the third party. (*Id.* at ¶ 54)

Schlanger died on January 21, 2009, survived by his two adult daughters, Jackowitz and Roberts, who were unaware of the Policy's existence during his lifetime. (*Id.* at ¶¶ 28-29, 31) On February 13, 2009, Life Equity, LLC, on behalf of the Schlanger Insurance Trust, submitted a claim for the proceeds of the Schlanger Policy. (*Id.* at ¶ 30) Subsequently, the administrator of the Estate informed plaintiff it would be making a competing claim to the proceeds of the Policy for the benefit of Schlanger's daughters, Jackowitz and Roberts. (*Id.* at ¶ 31) Plaintiff claims it became aware of the Schlanger

---

*Lincoln National Life Insurance Company v. Miquel Martinez 2006-1 Insurance Trust*, Civ. No. 09-CV-070-GMS (D. Del. filed Jan. 28, 2009); *Principal Life Insurance Company v. Lawrence Rucker 2007 Insurance Trust*, Civ. No. 08-CV-488-GMS (D. Del. filed September 17, 2008); and *The Lincoln National Life Insurance Company v. Schuchman*, Civ. No. 08-CV-4639-DRH-WDW (E.D.N.Y.). (D.I. 21 at ¶¶ 45-47)

Policy's STOLI nature only after Schlanger's death and the submission of competing claims for the death benefit. (*Id.* at ¶ 32)

## III. STANDARD

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, and attached exhibits to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

Plaintiff's amended complaint seeks a declaration that the Schlanger Policy is void ab initio for lack of any insurable interest and, in the alternative, requests interpleader relief to resolve the competing claims of the Schlanger Insurance Trust and the Estate to the death benefits of the Policy. (D.I. 21 at ¶¶ 64-78) Defendant's motion to dismiss argues that: (1) plaintiff is barred from asserting invalidity of the Schlanger Policy because the two-year contestability period has already expired; (2) even if plaintiff may bring its claim for declaratory judgment, plaintiff has failed to sufficiently allege a lack of insurable interest; and (3) the interpleader claim should be dismissed because plaintiff has failed to deposit the Policy's proceeds with the court. (D.I. 23 at 4, 9, 17; D.I. 27 at 3, 8)

### A. Incontestability Clause

The Schlanger Policy was issued on December 14, 2006, and Schlanger died more than two years later on January 21, 2009. (D.I. 21 at ¶¶ 25, 28) Plaintiff filed the present action on July 10, 2009, seeking to contest the validity of the Policy despite its incontestability clause. (D.I. 1) Given the timing of the action, defendant asserts that the incontestability clause is a legal bar to plaintiff's claims. Because Delaware courts have not addressed whether a contract, alleged to be void ab initio, is contestable outside of its contestability period, the issue raises a new question of law that the court cannot appropriately resolve on a motion to dismiss.[3]

---

[3] In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under Delaware state law, the law of the place where an insurance contract was made

6

Two-year incontestability clauses are required in life insurance contracts by Delaware law, which provides:

> There shall be a provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than 2 years after its date of issue, except for (1) nonpayment of premiums, and (2) at the insurer's option, provisions relating to benefits in the event of total and permanent disability and provisions granting additional benefits specifically against death by accident or accidental means.

18 Del. C. § 2908 (2010). In accordance with this statute, the Schlanger Policy contained an incontestability clause, but it did not provide any exceptions for contesting the contract after the contestability period beyond those provided by statute, stating only that "[plaintiff] will not contest this policy after it has been in force during the Insured's lifetime for 2 years from the Issue Date." (D.I. 21, ex. A at 6) Therefore, the only way for plaintiff to be able to contest the Policy outside of the two-year contestability period, is to argue – as plaintiff has done – that the insurance contract is void ab initio and thus the incontestability clause was never in effect in the first place. As previously noted, the issue of whether plaintiff is legally entitled to contest the validity of an insurance contract that is allegedly void ab initio after the two-year contestability period appears to be a matter of first impression in Delaware. Furthermore, there appears to be no consensus from other jurisdictions with statutorily required incontestability clauses.[4]

---

governs the obligations imposed by such contract. *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949). Both parties' briefs argue the issues under Delaware law and, assuming the facts regarding where and how the Schlanger Policy was made are not contested, Delaware law will govern. However, plaintiff has not conceded that Delaware law governs. (D.I. 26 at 7 n.6)

[4] Forty-seven of the fifty states require, by statute, incontestability clauses in individual life insurance policies. However, only Arkansas, Kansas, and Missouri have statutory language explicitly excepting cases of misrepresentation or fraud from incontestability. *See* Ark. Code Ann. § 23-91-105 (2010); Kans. Stat. Ann. § 40-420 (2010); Mo. Ann. Stat. § 376.1124 (2010). South Carolina is the only state that explicitly bars fraud from being raised after the contestability period has expired. *See* S.C. Code

7

While New York courts have held that expiration of the contestability period bars the insurer from thereafter asserting that the contract was void ab initio for lack of an insurable interest, other state jurisdictions have generally allowed the insurer to contest the validity of a policy that is void ab initio, even after the passage of the contestability period. *Compare New England Mutual Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 270 (N.Y. 1989) (holding that, under New York law, insurer was barred from asserting invalidity of a policy because the statutory incontestability period had expired before the insured died), *with Paul Revere Life v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997) ("California law provides that a policy which is void ab initio may be contested at any time, even after the incontestability period has expired."), *and Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 689 (Md. Ct. App. 1988) (finding that incontestability clauses do not apply to insurance policies that are void ab initio because "[t]he invocation of an incontestability provision presupposes a basically valid contract."). In summary:

> The majority of courts to have considered the question have ruled that the public policy underlying the requirement of an insurable interest outweighs that behind the incontestability clause, often reaching that result by holding the insurance policy to have been void ab initio . . . . In New York, however, and perhaps one or two other states, the courts have adopted [the view] that the incontestability clause trumps the absence of an insurable interest.

Richard A. Lord, 7 Williston on Contracts § 17:5 (4th ed. 2010) (citations omitted).

Defendant suggests that this court should follow *Caruso* and dismiss plaintiff's claim as barred by the Policy's incontestability clause because Delaware and New York have similar statutory provisions regarding incontestability clauses.[5] (D.I. 23 at 13-14);

---

Ann. § 38-63-220 (2009).
    [5] *See Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 408 (3d Cir. 1949) (noting the similarity in language between the New York and Delaware insurance statutes and finding, absent any Delaware case law to the contrary, that the General Assembly of Delaware General "intended that the Delaware statute should

*compare* 18 Del. C. § 2908 (2010), *with* N.Y. Ins. Law § 3203[a][3] (2010) (effective Oct. 5, 2008).[6] In *Caruso*, the plaintiff insurance company contested the validity of a life insurance policy in which the deceased insured's business partner, the defendant, was the owner and beneficiary. *Caruso*, 535 N.E.2d at 271. Similar to the present case, the insured died after the two-year contestability period on the policy had expired. *Id.* The insurance company asserted that the policy in question lacked an insurable interest at inception, so the policy in question was void ab initio and neither an agreement of the parties nor any court could enforce it. *Id.* at 272. Siding with defendant, the *Caruso* court reasoned that enforcement of incontestability clauses is necessary in order to encourage insurers to check into the truth of declarations made by the applicant and to take prompt action if they have reason to suspect a lack of insurable interest. *See Caruso*, 535 N.E.2d at 274-75; *see also First Penn-Pacific Life Ins. Co. v. Evans*, Civ. No. AMD 05-444, 2007 WL 1810707, at *5-*7 (D. Md. 2007) (interpreting Arizona law to find that the incontestability clause gives the insurer a reasonable amount of time to investigate and challenge the validity of an insurance policy).

Plaintiff at bar, on the other hand, argues that this court should follow jurisdictions that have held a contract that was void ab initio is contestable even after the contestability period has expired. (D.I. 26 at 15-16); *see, e.g., Paul Revere Life*, 105 F.3d at 492 (interpreting California law); *Beard*, 550 A.2d at 689 (interpreting Marlyand law). In some of those jurisdictions, courts have determined that society's interest in

---

receive the legal construction and have the effect ascribed to such statutes by decisions similar to that of the Court of Appeals of New York.").

[6] The New York statute reads in part: "[T]he policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue . . . except in each case for nonpayment of premiums or violation of policy conditions relating to service in the armed forces." N.Y. Ins. Law § 3203[a][3] (2010).

preventing insurance policies that constitute wagering contracts, a form of gambling, should outweigh its interest in enforcing an incontestability clause. *See Beard*, 550 A.2d at 682; *see also Warnock v. Davis*, 104 U.S. 775, 779 (1881) ("[Wagering contracts] have a tendency to create a desire for the [death of the insured]. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.").

Because the issue is a question of law and plaintiff has stated a legally cognizable claim that the Schlanger Policy was void ab initio for lack of insurable interest, *infra*, dismissal is not appropriate at this time. The court will decline to make a decision until the summary judgment stage.

### B. Insurable Interest

Under Delaware law, one must have an insurable interest in another's life in order to procure an insurance policy on that individual's life. 18 Del. C. § 2704(a) (2010). An insurable interest is defined, in relevant part, as benefits that are payable to individuals related closely by blood or by law who have a substantial interest out of love and affection to the insured; other individuals with a lawful and substantial interest in having the life, health or bodily safety of the insured continue; or the trustee of a trust established by the insured. 18 Del. C. § 2704(c) (2010). Defendant asserts that the beneficiary of a life insurance policy is required to have an insurable interest in the life of the insured if, and only if, that policy is procured by someone **other** than the insured. (D.I. 23 at 7) In other words, because Schlanger himself procured the life policy, defendant contends that Schlanger could assign the beneficiary interest to anyone, regardless of whether there was an insurable interest. (*Id.* at 6-8) Moreover, defendant argues, Delaware statute provides that a trust established by the insured has an

10

insurable interest so, regardless of the circumstances, the Schlanger Insurance Trust has an insurable interest in Schlanger's life. (*Id.* at 5)

While there is no doubt an insured can name his own trust as the owner and beneficiary of a policy (18 Del. C. § 2704(a) (2010)), the Supreme Court has long ago held that where an insurance policy, from its inception,[7] lacks an insurable interest, it is invalid. *Grigsby* 222 U.S. at 156-67. In *Grisby*, the Court explained that an insurance policy lacking an insurable interest at inception merely serves as a cover for a "pure wager," which contradicts the precise purpose of a life insurance policy because it "gives the [policyholder] a sinister counter interest in having the life come to an end." *Id.* at 154-55; *see also Warnock*, 104 U.S. at 779 (1881) (condemning wagering contracts because they "have a tendency to create a desire for the [death of the insured]. They are, therefore, **independently of any statute on the subject**, condemned, as being against public policy.") (emphasis added). To hold that a trust without an otherwise insurable interest in the life of the insured at inception is a valid beneficiary is to sanction speculative risks on human lives and to "encourage the evils for which wager policies are condemned." *Warnock*, 104 U.S. at 781.

---

[7] Lack of insurable interest is an issue that arises only at the time of policy procurement. 18 Del. C. § 2704(a) (2010) ("[N]o person shall procure or cause to be procured any [life] insurance contract . . . unless the benefits . . . are payable to the individual insured or his/her personal representatives or to a person having, **at the time when such contract was made**, an insurable interest in the individual insured.") (emphasis added). It is well established that, absent a lack of insurable interest at inception, it is legal for a policyholder to transfer the beneficial interest in a policy. *See, e.g., Grisby v. Russell*, 222 U.S. 149, 156 (1911) ("[I]t is desirable to give to life policies the ordinary characteristics of property. . . . To deny the right to sell except to persons having such an interest is to diminish appreciably the value of the contract in the owner's hands."); *Product Clearing v. Angel*, 530 F. Supp. 2d 646, 648 (S.D.N.Y. 2008) ("[A]n assignment is not automatically condemned when the assignee lacks an insurable interest, so long as there is no prior agreement to assign.") (citing *Grisby*, 222 U.S. at 156-57).

Similarly, there is no doubt an individual may legally procure an insurance policy on his own life, but if the insured procures the policy at the behest of another, the policy may nevertheless lack a legally insurable interest. Delaware statute provides:

> Any individual of competent legal capacity may procure or effect an insurance contract upon his/her own life or body for the benefit of any person, but no person shall procure or **cause to be procured** any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his/her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured.

18 Del. C. § 2704(c) (emphasis added). "The general rule is that all persons have an insurable interest in their own life . . . and may . . . insure their life in good faith for the benefit of any person whom they see fit to name as the beneficiary, regardless of whether such person has an insurable interest in their life, **provided it not be done by way of cover for a wagering policy**." 44 Am. Jur. 2d Insurance § 978 (2010) (citations omitted); see Richard A. Lord, 7 Williston on Contracts § 17.5 (4th ed. 2010) ("[A] person may take out a policy on his own life, pay the premiums, and designate as a beneficiary any person he chooses, even though the beneficiary chosen would otherwise have no insurable interest in the life of the insured. Such a policy is not a wagering contract, unless the transaction is for the purpose of speculation and is mere cover for a wagering transaction."); see also McKee v. Penick (In re Al Zuni Trading Co.), 947 F.2d 1403, 1405 (9th Cir. 1991) (construing Arizona state law to prohibit the "deliberate attempt to evade the requirement of an insurable interest"); Bohannon v. Manhattan Life Ins. Co., 555 F.2d 1205 (5th Cir. 1977) (finding that one purpose of Georgia's insurable interest requirement is "to prevent wagering"). The insurable interest requirement emerged in order "to curtail use of insurance contracts as wagering contracts by distinguishing between contracts that sought to dampen the risk of actual

future loss and those that instead sought to speculate on whether some future contingency would occur." *Sun Life Assurance Co. of Canada v. Paulson*, Civ. No. 07-3877, 2008 WL 451054, at *2 n.4 (D. Minn. Feb. 15, 2008) (citation omitted).

However, it appears that neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a sufficient allegation of lack of insurable interest at the time of policy procurement, and no clear consensus has emerged across jurisdictions regarding this issue. *Compare Paulson*, 2008 WL 451054 at *1-*2 (holding, under Minnesota law, that a mutual intent of the insured and a third party to avoid the prohibition on wagering contracts is required to allege lack of insurable interest), *with Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D.N.J. 2009) (finding that unilateral intent was sufficient in alleging an insurable interest challenge).

In support of its contention that the Schlanger Policy lacked an insurable interest at inception, plaintiff has alleged that: (1) the Schlanger Policy was a STOLI policy because Schlanger and certain STOLI promoters planned, prior to applying for it, to sell the Policy or the beneficial interest in it to a stranger investor lacking an insurable interest in Schlanger's life (*Id.* at ¶¶ 33-34); (2) the Schlanger Insurance Trust and Schlanger Family Trust were prepared by parties involved in secondary life insurance market transaction and were used to conceal the STOLI nature of the Policy (*Id.* at ¶¶ 38-40); (3) the participants in the alleged STOLI scheme were allegedly parties in other STOLI transactions (*Id.* at ¶¶ 44-45); (4) the participants in the STOLI scheme never intended or believed that Schlanger or the Schlanger Insurance Trust would pay the premiums on the Policy (*Id.* at ¶ 49); (5) a third party with no insurable interest in Schlanger's life advanced or financed all the premiums for the Policy (*Id.* at ¶¶ 50, 53);

and (6) Schlanger received, or expected receive, compensation for his participation in the alleged STOLI scheme (*Id.* at ¶ 54).

Although there is no consensus among jurisdictions regarding the threshold for pleading a lack of insurable interest on a suspected STOLI policy, cases addressing the issue have usually considered whether the stranger third party in a STOLI case is identifiable in order to determine, at a minimum, the existence of bilateral intent. *See, e.g., Paulson*, 2008 WL 451054 at *5 ("The mutual intent of the insured and the third party to avoid the prohibition on wagering contracts determines the existence of such a scheme, purpose, or agreement."); *Angel*, 530 F. Supp. 2d at 655-56 (interpreting New York law to find that, where the third party's identity and intent were known, factual allegations of lack of insurable interest were sufficient). Viewing the pleadings for the present case in the light most favorable to the non-moving party, plaintiff has alleged that there was some specific third party investor involved in the STOLI scheme prior to submission of the Application and that, if the facts are true, such party may be identifiable during discovery. Moreover, plaintiff has alleged that the parties to the alleged STOLI scheme attempted to circumvent the law against wagering policies at the time of procurement. Put another way, plaintiff has sufficiently alleged that a particular third party stranger investor was aware of the alleged STOLI arrangement prior to procurement of the Schlanger Policy. Not only did plaintiff allege factual details regarding the activities of the parties suspected to be involved in the STOLI scheme, but it also outlined alleged efforts to conceal the STOLI scheme by use of the Schlanger Insurance Trust and the Schlanger Family Trust. In addition, plaintiff has alleged that Schlanger's assignment of the beneficiary interest in the Policy was a cover for a wagering contract because of his active participation in the scheme and related

compensation. As pled, these allegations may overcome the presumption that there is a valid insurable interest in whoever the insured assigns the beneficial interest in his policy. Therefore, plaintiff's allegations "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

### C. Interpleader Claim

If the Policy is declared valid, plaintiff seeks interpleader relief under 28 U.S.C. § 1335 to resolve the competing claims of the Schlanger Insurance Trust and the Estate to the death benefits of the Policy. (D.I. 21 at ¶¶ 68-78) Defendant contends that the interpleader claim should be dismissed because plaintiff has thus far failed to deposit any funds or post any bond with the court. (D.I. 23 at 17-18); *see* 28 U.S.C. § 1335(a)(2) (2005); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999). While a dismissal is warranted if plaintiff fails to cure the defect after being granted the opportunity to do so, the court has not yet granted plaintiff the opportunity to post a deposit or bond. *See John Hancock Mut. Life Ins. Co. v. Yarrow*, 95 F. Supp. 185, 187 (E.D. Pa. 1951) (giving plaintiff, on a motion to dismiss an interpleader claim, the opportunity to post a sufficient deposit with the court rather than granting dismissal). As the declaratory judgment claim is still pending, the court will not, at this time, order plaintiff to post the requisite deposit or bond to commence the potential interpleader action. If interpleader relief is still necessary after the declaratory judgment claim is resolved, the court will order plaintiff to post the requisite deposit or bond at that time.

### V.  CONCLUSION

In view of the foregoing, plaintiff has sufficiently pled facts to state a claim for declaratory judgment that the Schlanger Policy is void ab initio due to a lack of insurable

interest and, in the alternative, may still commence an interpleader action contingent on the posting of a sufficient deposit or bond. Defendant's motion to dismiss is denied. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH SCHLANGER 2006 INSURANCE TRUST and FREDDIE JACKOWITZ and ABBE ROBERTS, individually and as administrators of the ESTATE OF JOSEPH SCHLANGER,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 09-506-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

At Wilmington this 20th day of July, 2010, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that the Schlanger Insurance Trust's motion to dismiss (D.I. 22) is denied.

_____
Chief, United States Judge